**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| DOMINION ENERGY COVE POINT LNG, LP, <br><br> *Plaintiff*, <br><br> v. <br><br> MATTAWOMAN ENERGY, LLC, <br><br> *Defendant*. | Civil Action No. 20-611 (LO/IDD) |

### DEFENDANT MATTAWOMAN ENERGY, LLC'S AMENDED ANSWER AND COUNTERCLAIM

Defendant Mattawoman Energy, LLC ("Mattawoman"), by counsel and pursuant to Rules 8, 12(a)(1)(A), 13, and 15 of the Federal Rules of Civil Procedure, hereby amends its answer and counterclaim filed in the above-captioned civil action.[1] For its amended answer and counterclaim, Mattawoman states as follows:

RESPONSE TO THE ALLEGATIONS IN THE COMPLAINT[2]

Parties and Jurisdiction

1. Mattawoman is without sufficient information to admit or deny the allegations in paragraph 1 of the complaint, which has the effect of a denial, so it demands strict proof of

---

[1] Rule 15(a)(1)(B) permits Mattawoman to amend its answer, which includes a counterclaim, as a matter of course (and therefore without a motion for leave to amend) within 21 days of service of Dominion's answer to counterclaim. *See* FED. R. CIV. P. 15(a)(1)(B). Dominion served its answer to counterclaim on August 3, 2020, so this amended answer, including the amended counterclaim, is timely.

[2] Mattawoman denies any allegations in the complaint that are not expressly admitted herein.

Dominion's citizenship.

2. Mattawoman admits that it is a limited liability company organized under Delaware law, and that it is a citizen of at least Texas. Mattawoman denies the remaining allegations contained in paragraph 2 of the complaint.

3. Mattawoman admits that the amount in controversy exceeds $75,000, and that Mattawoman is a citizen of at least Texas. Mattawoman is without sufficient information to admit or deny the remaining allegations contained in paragraph 3 of the complaint, which has the effect of a denial, so it demands strict proof that this Court may exercise jurisdiction pursuant to 28 U.S.C. § 1332.

4. Mattawoman admits that venue is proper in this District as well as other districts.

Facts

5. Mattawoman admits that it entered into the May 29, 2019 Service Agreement attached as Exhibit 1 to the complaint, and that Exhibit 1 reflects some of the terms of the May 29, 2019 Service Agreement. Mattawoman denies that the May 29, 2019 Service Agreement contemplated Plaintiff Dominion Energy Cove Point LNG, LP ("Dominion") transporting its gas to primary receipt points in Loudoun and/or Fairfax County. Mattawoman denies any other allegations in paragraph 5 that are inconsistent with the contents of the May 29, 2019 Service Agreement.

6. Mattawoman admits that Exhibit 1 reflects some of the terms of the May 29, 2019 Service Agreement, but denies any allegations in paragraph 6 that are inconsistent with the contents of the May 29, 2019 Service Agreement.

7. Mattawoman admits that it entered into the October 28, 2019 Agreement attached as Exhibit 2 to the complaint, and that Exhibit 2 reflects some of the terms of the October 28,

2019 Service Agreement. Mattawoman denies any allegations in paragraph 7 that are inconsistent with the contents of the October 28, 2019 Service Agreement.

8. Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 8 that are inconsistent with the contents of the October 28, 2019 Service Agreement.

9. Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 9 that are inconsistent with the contents of the October 28, 2019 Service Agreement.

10. Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 10 that are inconsistent with the contents of the October 28, 2019 Service Agreement.

11. Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 11 that are inconsistent with the contents of the October 28, 2019 Agreement.

12. Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 12 that are inconsistent with the contents of the October 28, 2019 Agreement.

13. Mattawoman admits that the October 28, 2019 Service Agreement obligated Dominion to provide LTS services to Mattawoman, and that, in return, Mattawoman agreed to pay Dominion for those services rendered. Mattawoman further admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 13 that are inconsistent with the contents of the October 28, 2019 Agreement.

14. Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28,

2019 Service Agreement, but denies any allegations in paragraph 14 that are inconsistent with the contents of the October 28, 2019 Agreement.

15.  Mattawoman admits that it could defer payment for any services rendered in December 2019 or January 2020 at least March 31, 2020. Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 15 that are inconsistent with the contents of the October 28, 2019 Agreement.

16.  Mattawoman admits that it placed an assurance payment of $747,600 in escrow pursuant to a March 29, 2019 Precedent Agreement. Mattawoman further admits that Dominion's FERC Gas Tariff General Terms and Conditions is located as of the date of this filing at https://dekaflow.domonionenergy.com/jsp/info_post.jsp?&company=cpt#. Mattawoman denies the remaining allegations in paragraph 16.

17.  Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 17 that are inconsistent with the contents of the October 28, 2019 Agreement.

18.  Mattawoman admits that Exhibit 2 reflects some of the terms of the October 28, 2019 Service Agreement, but denies any allegations in paragraph 18 that are inconsistent with the contents of the October 28, 2019 Agreement.

Mattawoman's Breach of the Service Agreement

19.  Mattawoman admits that Dominion delivered invoices to Mattawoman for December 2019, January 2020, February 2020, March 2020, April 2020, and May 2020. Mattawoman denies the remaining allegations in paragraph 19.

20.  Mattawoman admits that it did not make payments to Dominion on those invoices. Mattawoman denies any remaining allegations in paragraph 20.

21. Mattawoman admits that representatives of Mattawoman and Dominion held a call to discuss payment. Mattawoman also admits to the existence of Section 18(d) of Dominion's FERC Tariff and email alleged in paragraph 21, but denies any allegations that are inconsistent with the contents of the FERC Tariff and email.

22. Mattawoman admits that representatives of Mattawoman and Dominion held another call to discuss payments. Mattawoman also admits to the existence of the email alleged in paragraph 22, but denies any allegations that are inconsistent with the contents of that email.

23. Mattawoman admits the allegations contained in paragraph 23 of the complaint.

24. Mattawoman admits that Exhibit 3 reflects the contents of the alleged email, but Mattawoman denies any remaining allegations in paragraph 24 that are inconsistent with the contents of the October 28, 2019 Agreement.

25. Mattawoman admits that Exhibit 3 reflects the contents of the alleged email, but denies any remaining allegations in paragraph 25 that are inconsistent with the contents of the October 28, 2019 Service Agreement or Exhibit 3.

26. Mattawoman admits that Exhibit 3 reflects the contents of the alleged email, but denies any remaining allegations in paragraph 26 that are inconsistent with the contents of the October 28, 2019 Agreement or Exhibit 3.

27. Mattawoman admits that, on or about April 13, 2019, Dominion swept from escrow the $748,514.55 assurance payment made by Mattawoman pursuant to the March 29, 2019 Precedent Agreement. Mattawoman denies the remaining allegations contained in paragraph 27 of the complaint.

28. Mattawoman admits that Exhibit 3 reflects the contents of the alleged letter, but denies any remaining allegations in paragraph 28 that are inconsistent with the contents of the

October 28, 2019 Agreement or Exhibit 4.

29. Mattawoman admits that it has not made any payments to Dominion in response to Dominion's January, February, March, April, or May 2020 invoices, and further admits that it has not placed any more funds in escrow. Mattawoman denies any remaining allegations in paragraph 29.

Count I
(Breach of the Service Agreement)

30. Mattawoman incorporates its responses to the allegations in paragraphs 1 through 29 of the complaint.

31. Mattawoman admits that the October 28, 2019 Service Agreement contains some, but not all, of the legal obligations between Dominion and Mattawoman. Mattawoman further admits that the October 28, 2019 Service Agreement is valid and binding, however it denies that Dominion is entitled to enforce the provisions it seeks to enforce in this suit.

32. Mattawoman denies the allegations contained in paragraph 32 of the complaint.

33. Mattawoman denies the allegations contained in paragraph 33 of the complaint.

34. Mattawoman denies the allegations contained in paragraph 34 of the complaint.

35. Mattawoman admits that it provided written notices that Mattawoman has not paid any invoiced amounts, but denies the remaining allegations contained in paragraph 35 of the complaint.

36. Mattawoman denies that Dominion is entitled to any prejudgment interest or any attorneys' fees.

AVOIDANCE AND AFFIRMATIVE DEFENSES

Mattawoman, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, affirmatively

pleads the following avoidance and affirmative defenses:[3]

    A.    <u>Prevention Doctrine</u>.  The October 28, 2019 Service Agreement obligated Dominion to "provide LTS service to or for [Mattawoman]…"  Dominion could only provide LTS service to Mattawoman if Mattawoman was able to construct a power plant.  Mattawoman would only be able to secure the financing to construct a power plant, and actually construct the power plant, if Mattawoman had agreements with natural gas suppliers to service the power plant for 365 days a year.  The October 28, 2019 Service Agreement only obligated Dominion to provide LTS service to Mattawoman for 350 days a year.  Mattawoman is excused from its payment obligations under the October 28, 2019 Service Agreement because Dominion prevented, obstructed, and affirmatively hindered Mattawoman from entering into an agreement with Vega Energy to supply natural gas to Mattawoman on the 15 days a year that Dominion refused to supply Mattawoman's power plant with natural gas.  Accordingly, Dominion's acts prevented Mattawoman from constructing the power plant and ordering the natural gas from Dominion.  In other words, Dominion's acts prevented the condition precedent to Dominion's obligation to transport natural gas to Mattawoman: the financing, construction, and existence of a functional power plant fueled by natural gas.

    B.    <u>Act of God</u>.  Mattawoman is excused from its payment obligations under the October 28, 2019 Service Agreement because the global coronavirus pandemic

---

[3] Mattawoman reserves its right to amend its pleadings to add additional avoidance and affirmative defenses if discovery reveals evidence of any such defenses.

7

has, without fault of Mattawoman, obstructed access to capital markets. This obstruction, in turn, has made the financing and process to construct the power plant commercially impossible, thereby frustrating the entire purpose and benefit of the October 28, 2019 Service Agreement.

C. <u>Act of Law</u>.  Mattawoman is excused from its payment obligations under the October 28, 2019 Service Agreement because Governor Northam's (and other governors') executive orders in response to the coronavirus outbreak have, without fault of Mattawoman, obstructed access to capital markets. This obstruction, in turn, has made the financing and process to construct the power plant commercially impossible, thereby frustrating the entire purpose and benefit of the October 28, 2019 Service Agreement.

D. <u>Mutual Mistake of Fact</u>.  The October 28, 2019 Service Agreement is voidable because both parties believed a mistaken material fact when they executed the contract.  Specifically, both parties believed at the time they entered the October 28, 2019 Service Agreement that market demand for the electricity to be produced by the power plant was significantly higher than it actually was and is.

E. <u>Prior Material Breach.</u> Section 1 ("Services to be Rendered") of the October 28, 2019 Service Agreement specifically obligates Dominion to "provide LTS service to or for" Mattawoman.  Section 2 states that "Service under this Agreement shall commence as of December 15, 2019 and shall continue in full force and effect until December 14, 2039…"  Dominion has never provided any transportation services under the October 28, 2019 Service Agreement.  Moreover, Dominion cannot provide any transportation services under the October 28, 2019 Service

Agreement because there is no pipeline connectivity to the property on which the power plant is to be built. In other words, Dominion has not performed any of its central obligation to transport natural gas to Mattawoman. Dominion's failure to perform its central obligation for which it may charge Mattawoman excuses Mattawoman from its payment obligations to Dominion.

## COUNTERCLAIM

Mattawoman, pursuant to Rules 13 and 15 of the Federal Rules of Civil Procedure, asserts the following counterclaim against Dominion:[4]

1. Since 2015, Mattawoman has sought to construct a power plant that would provide electricity to end users in Maryland.

2. Both Dominion and Mattawoman contemplated that Mattawoman's power plant would generate electricity from the receipt and consumption of natural gas transported by Dominion.

3. On or about March 25, 2019, Dominion and Mattawoman entered into a Precedent Agreement for Limited Firm Transportation Services Pursuant to Rate Schedule LTS ("March 2019 Precedent Agreement").

4. Under the March 2019 Precedent Agreement, Mattawoman agreed to provide Dominion with an $747,600 "adequate assurance of payment" to assure Dominion that Mattawoman could meet its financial obligations to Dominion under the March 2019 Precedent Agreement.

5. On or about May 29, 2019, Dominion and Mattawoman entered into a non-

---

[4] Mattawoman reserves its right to further amend its pleadings to add additional counterclaims if discovery reveals evidence of any such claims.

conforming Service Agreement Under Rate Schedule: LTS ("May 2019 Service Agreement"). *See* Compl. Exh. A.

6. Dominion submitted the May 2019 Service Agreement to FERC for authorization to implement it.

7. On or about June 13, 2019, Dominion and Mattawoman entered into a security deposit agreement ("SDA") pursuant to which Mattawoman agreed to transfer the $747,600 adequate assurance of payment under the March 2019 Precedent Agreement to an account in Dominion's name.

8. Under the SDA, Mattawoman "assigns all of its right, title and interest in and to the [$747,600] as security for all amounts due or to come due from [Mattawoman] to [Dominion] in accordance with and pursuant to the terms and conditions of the … subsequent Service Agreements…"

9. The SDA also provides that Dominion may apply the money in Dominion's account to "any amount … when and as due."

10. On or about June 13, 2019, Mattawoman deposited $747,600 as an assurance payment in a US Bank account pursuant to the SDA

11. FERC denied authorization of implementation of the May 2019 Service Agreement because it did not approve two non-conforming provisions in it.

12. In its denial, FERC ruled that it would authorize a new rate agreement that struck the identified non-conforming provisions of the May 29, 2019 Service Agreement.

13. Dominion was not required to enter into the October 28, 2019 Service Agreement, (or any transportation service agreement) for which capacity was not available, or that would require the construction or acquisition of any new facilities.

14. On or about October 28, 2019, Dominion and Mattawoman entered into a new Service Agreement Under Rate Schedule: LTS ("October 2019 Service Agreement"). *See* Compl. Exh. B. The October 2019 Service Agreement strikes and omits the two non-conforming provisions. *See id*.

15. FERC authorized the implementation of the October 2019 Service Agreement on December 13, 2019.

16. Under the October 2019 Service Agreement, Dominion's LTS service "shall commence on December 15, 2019 and shall continue in full force and effect until December 14, 2039…"

17. The October 2019 Service Agreement only obligates Dominion to provide LTS service for all but 15 days per year.

18. To obtain full financing to construct the power plant, Mattawoman needed to secure a natural gas supply for every day of the year.

19. Mattawoman and another natural gas supplier, Vega Energy, negotiated an agreement pursuant to which Vega would supply Mattawoman with natural gas for the up to 15 days per year that Dominion was not obligate to do so.

20. Dominion was involved in the Mattawoman-Vega Energy negotiations.

21. Dominion obstructed the Mattawoman-Vega Energy negotiations, Specifically, Dominion was unwilling to guarantee primary receipt point additions to the contract, which Vega needed to mitigate an unacceptable risk under the agreement.

22. As a result of Dominion's unwillingness to agree to a necessary provision to the Mattawoman-Vega Energy deal, the Mattawoman-Vega Energy agreement was never consummated.

23. Mattawoman has not been able to secure financing to construct its power plant because, among other things, it has been unable to secure a natural gas supplier for the 15 days during which Dominion is not obligated to transport natural gas to Mattawoman.

24. The only reason Mattawoman sought Dominion's natural gas is to supply Mattawoman's power plant.

25. Mattawoman has not constructed any power plant.

26. There is no connectivity from any Dominion pipeline to the property on which the power plant is to be built.

27. Therefore, Dominion has not had, nor has it ever had, sufficient facilities to transport natural gas to or for Mattawoman.

28. Mattawoman has never submitted a request for any natural gas service under the October 2019 Service Agreement.

29. Dominion has never reviewed or accepted any requests from Mattawoman for natural gas service under the October 2019 Service Agreement.

30. Dominion has never transported any natural gas to Mattawoman under the October 2019 Service Agreement.

31. Mattawoman is excused from any payment obligations under the October 2019 Service Agreement because Dominion prevented the Vega deal, which prevented the construction of the power plant, which eliminates Mattawoman's demand for any natural gas transported by Dominion.

32. Mattawoman is also excused from any payment obligations under the October 2019 Service Agreement because the global coronavirus pandemic has, without fault of Mattawoman, made it commercially impossible to access to capital markets to secure financing

for its power plant.

33. Mattawoman is also excused from its payment obligations under the October 28, 2019 Service Agreement because Governor Northam's (and other governors') executive orders in response to the coronavirus outbreak have, without fault of Mattawoman, made it commercially impossible to access to capital markets to secure financing for its power plant.

34. Mattawoman is excused from its payment obligations under the October 2019 Service Agreement because Dominion has failed to perform its central obligation for which it may charge Mattawoman. Specifically, Mattawoman is not obligated to pay for natural gas that Dominion has never transported (nor can it transport) to Mattawoman.

35. No amounts are due from Mattawoman to Dominion under the October 2019 Service Agreement because Mattawoman is excused from its payment obligations.

36. Nevertheless, Dominion invoiced Mattawoman under the October 2019 Service Agreement.

37. Dominion applied Mattawoman's $747,600 security payment under the SDA to the amounts that Dominion believes is due under the October 2019 Service Agreement.

38. Dominion has retained all of Mattawoman's $747,600 security payment.

39. Instead, Dominion insists that it is entitled to all of the $747,600 security payment.

40. Moreover, Dominion has exercised control over that amount by collecting it for itself and with no intent to return any of it.

41. There are no contractual provisions that authorize the recovery of attorneys' fees for a party for a breach of the October 2019 Service Agreement.

<u>Count I</u>
(Breach of the SDA and October 2019 Service Agreement)
(Alternative to Count II)

42. Mattawoman incorporates its responses to the allegations in paragraphs 1 through 41 of this counterclaim.

43. The SDA is a valid and enforceable contract between Dominion and Mattawoman.

44. The October 2019 Service Agreement is a valid and enforceable contract between Dominion and Mattawoman.

45. Under the October 2019 Service Agreement, Mattawoman is obligated to pay Dominion for services rendered under the October 2019 Service Agreement.

46. Thus, the SDA and the October 2019 Service Agreement authorize Dominion to collect Mattawoman's deposited $747,600 if *and only if* amounts under the October 2019 Service Agreement are legally due and owing, and Mattawoman failed to pay amounts legally due and owing.

47. Dominion never rendered any natural gas transportation services to Mattawoman under the October 2019 Service Agreement.

48. No amounts from Mattawoman to Dominion are or ever have been legally due and owing.

49. Dominion breached the SDA and the October 2019 Service Agreement when it collected Mattawoman's deposited $747,600 without any legal or contractual authority to do so.

50. As a direct and proximate result of Dominion's breach of the SDA and October 2019 Service Agreement, Mattawoman has suffered damages in the amount of $747,600.

51. Mattawoman is entitled to pre-judgment interest on this amount.

## Count II
### (Conversion)
### (Alternative to Count I)

52. Mattawoman incorporates its responses to the allegations in paragraphs 1 through 41 of the complaint.

53. Mattawoman properly owned the $747,600 security payment that it deposited into the US Bank account.

54. Dominion wrongfully converted the $747,600 security payment when it withdrew and assumed control over it.

55. Dominion's conversion was wrongful because it had no right to receive payment under the October 2019 Service Agreement, therefore it had no right to withdraw any of the $747,600 security payment to reduce the purported balance on the invoices.

56. Dominion's conversion interferes and obstructs with Mattawoman's ownership rights over the $747,600 security payment.

57. As a direct and proximate result of Dominion's conversion, Mattawoman has been damaged in the amount of $747,600.

### DEMAND FOR JURY TRIAL

Mattawoman respectfully requests trial by jury for all issues so triable in the complaint and amended answer, including the counterclaim.

### PRAYER FOR RELIEF

Mattawoman respectfully request that this Court: (1) DISMISS the complaint with prejudice and/or ENTER FINAL JUDGMENT for Mattawoman on Count I of the complaint; (2) ENTER FINAL JUDGMENT for Mattawoman on Counts I or II of the counterclaim in the amount of $747,600 plus pre-judgment interest; and (3) AWARD Mattawoman any other relief

this Court deems just and proper.

Dated: August 17, 2020

Respectfully Submitted,

**MATTAWOMAN ENERGY, LLC**

*By Counsel*

**VEDDER PRICE, P.C.**

\_\_\_/s/_ Anand Ramana_____
Anand Ramana (VSB No. 65852)
VEDDER PRICE, P.C.
1401 I Street, N.W.
Suite 1100
Washington, D.C. 20005
Tel: (202) 312-3325
E-mail: aramana@vedderprice.com
*Attorney for the Defendant*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2020, I electronically filed the foregoing pleading through this Court's Court Management/Electronic Court Files system, which then automatically serves it upon the following person electronically:

> Ms. Kathryn Barber, Esq.
> MCGUIREWOODS LLP
> 800 East Canal Street
> Richmond, Virginia 23219-3916
> Tel: (804) 775-4718
> Fax: (804) 225-5412
> E-mail: kbarber@mcguirewoods.com
>
> Mr. Jonathan Blank, Esq.
> MCGUIREWOODS LLP
> Suite 350
> 652 Peter Jefferson Parkway
> Charlottesville, Virginia 22911
> Tel: (434) 977-2509
> Fax: (434) 980-2258
> E-mail: jblank@mcguirewoods.com

                                             ___/s/_Anand Ramana_____
                                             Anand Ramana (VSB No. 65852)
                                             VEDDER PRICE, P.C.
                                             1401 I Street, N.W.
                                             Suite 1100
                                             Washington, D.C. 20005
                                             Tel: (202) 312-3325
                                             E-mail: aramana@vedderprice.com
                                             *Attorney for the Defendant*